[L.A. No. 31653. Dec. 31, 1984.]

In re the Marriage of JANET LINNEA and MARK JAYE SULLIVAN.
MARK JAYE SULLIVAN, Appellant, v.
JANET LINNEA SULLIVAN, Appellant.

764

**COUNSEL**

Sorenson & Meek, Morris J. Sorenson and Max Goodman for Appellant Husband.

Fred J. Hiestand and Hassard, Bonnington, Rogers & Huber as Amici Curiae on behalf of Appellant Husband.

Patricia Herzog for Appellant Wife.

Linda S. Mullenix, Phyllis Alden Truby, Grace Ganz Blumberg, Marti Ann Draper, Carol S. Boyk, Gassner & Gassner, Beverly Jean Gassner, Covington & Crowe, Donald G. Haslam, Jean D. Marcucci and Judi Oser as Amici Curiae on behalf of Appellant Wife.

---

**OPINION**

**BIRD, C. J.**—Is a spouse, who has made economic sacrifices to enable the other spouse to obtain a professional education, entitled to any compensation for his or her contribution upon dissolution of the marriage?

I.

Janet and Mark Sullivan were married in September of 1967. The following year, Mark (respondent) entered medical school at Irvine and Janet (appellant) began her final year of undergraduate college at UCLA.[1]

Appellant gives the following abbreviated account of the ensuing years.[2] From 1968 through 1971, respondent attended medical school. Until 1969, appellant worked part time while completing her undergraduate education. After graduation, she obtained a full-time position which she held through 1971.

In 1972, respondent began his internship at Portland, Oregon. Appellant gave up her full-time job to accompany him there. Shortly after the move, she obtained part-time employment.

The couple's daughter, Treisa, was born in May of 1974. Appellant ceased work until 1975 when she resumed part-time employment. From

---

[1]Both parties appealed from the judgment. However, Janet appealed on the issue that prompted this court to grant a hearing. Therefore, Janet will be referred to as appellant and Mark as respondent.

[2]This account is contained in appellant's trial brief, which was added to the record on appeal by stipulation, and which was before the trial court at the time of its rulings on the motions at issue here. Respondent has stated that he does not object to the use of these facts as general background.

It is not disputed that respondent obtained his professional education during the marriage or that appellant worked to support the couple. Also undisputed are the facts relating to the couple's property settlement and to the dissolution proceedings. (See *post,* at p. 766.)

1976 through 1977, she worked full-time. During this period, respondent completed his residency.

Both parties then moved back to California. Shortly afterward, they separated. In August 1978, respondent petitioned for dissolution of the marriage.

During the marriage, the couple had accumulated some used furniture and two automobiles, both with payments outstanding. This property was disposed of by agreement. Appellant received $500, some used furniture and her automobile, including the obligation to complete the payments.

At the dissolution proceeding, appellant sought to introduce evidence of the value of respondent's medical education. She argued that the education was obtained by the joint efforts and sacrifices of the couple, that it constituted the greatest asset of the marriage, and that—accordingly—both parties should share in its benefits.

The superior court rejected these arguments and granted respondent's motion *in limine* to exclude all evidence pertaining to the value of the education. At the same time, the court granted partial summary judgment to the effect that respondent's education did not constitute community property. The court indicated that it was barred from awarding appellant any compensation for her contribution to respondent's education by the rule of *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 461 [152 Cal.Rptr. 668] (professional education does not constitute community property).

In May of 1980, the court issued its interlocutory judgment of dissolution. Appellant was awarded no spousal support, but the court reserved jurisdiction for five years to modify that determination. The parties were awarded joint custody of their daughter. Respondent was ordered to pay appellant $250 per month for child support and to reimburse her for half the cost of the child's medical insurance. Finally, the court directed respondent to pay appellant $1,250 in attorney fees and $1,000 in costs.

Both parties appealed.

## II.

■ This court originally granted a hearing in this case primarily to determine whether a spouse, who has made economic sacrifices to enable the other spouse to obtain an education, is entitled to compensation upon dissolution of the marriage. While the case was pending before this court, the

Legislature amended the Family Law Act to provide compensation in all cases not yet final on January 1, 1985. (Stats. 1984, ch. 1661, §§ 2-4.)[3]

The amendments provide for the community to be reimbursed, absent an express written agreement to the contrary, for "community contributions to education or training of a party that substantially enhances the earning capacity of the party." (Civ. Code, § 4800.3, added by Stats. 1984, ch. 1661, § 2.) The compensable community contributions are defined as "payments made with community property for education or training or for the repayment of a loan incurred for education or training." (*Ibid.*) The reimbursement award may be reduced or modified where an injustice would otherwise result. (*Ibid.*)[4]

---

[3]Chapter 1661 amended sections 4800 and 4801 of the Civil Code and added section 4800.3. At the time of filing of this opinion, the changes had not been published in code form. Accordingly, the citations in this opinion are to session and chapter number.

[4]The reimbursement provision states in full: "Section 4800.3 is added to the Civil Code, to read:

"4800.3. (a) As used in this section, 'community contributions to education or training' means payments made with community property for education or training or for the repayment of a loan incurred for education or training.

"(b) Subject to the limitations provided in this section, upon dissolution of marriage or legal separation:

"(1) The community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party. The amount reimbursed shall be with interest at the legal rate, accruing from the end of the calendar year in which the contributions were made.

"(2) A loan incurred during marriage for the education or training of a party shall not be included among the liabilities of the community for the purpose of division pursuant to Section 4800 but shall be assigned for payment by the party.

"(c) The reimbursement and assignment required by this section shall be reduced or modified to the extent circumstances render such a disposition unjust, including but not limited to any of the following:

"(1) The community has substantially benefited from the education, training, or loan incurred for the education or training of the party. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding.

"(2) The education or training received by the party is offset by the education or training received by the other party for which community contributions have been made.

"(3) The education or training enables the party receiving the education or training to engage in gainful employment that substantially reduces the need of the party for support that would otherwise be required.

"(d) Reimbursement for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party for the education or training and any resulting enhancement of the earning capacity of a party. However, nothing in this subdivision shall limit consideration of the effect of the education, training, or enhancement, or the amount reimbursed pursuant to this section, on the circumstances of the parties for the purpose of an order for support pursuant to Section 4801.

"(e) This section is subject to an express written agreement of the parties to the contrary."

In addition to providing for reimbursement, the amendments require the court to consider, in awarding spousal support, "the extent to which the supported spouse contributed to the attainment of an education, training, or a license by the other spouse." (Civ. Code, § 4801, as amended by Stats. 1984, ch. 1661, § 3.)

Since the property settlement in the present proceeding will not be final on January 1, 1985 (see Cal. Rules of Court, rule 24(a)), appellant is entitled to the benefit of the new amendments. (Stats. 1984, ch. 1661, § 4.) The trial court did not, of course, make the findings necessary to determine whether and in what amount reimbursement and/or support should be awarded under these provisions since they were not in existence at that time. Accordingly, the judgment denying any compensation for contributions to education must be reversed.

### III.

**(2a)** Respondent has cross-appealed from that portion of the trial court's judgment ordering him to pay $1,250 for appellant's attorney fees and $1,000 for her costs. He contends that the decision was an abuse of the trial court's discretion.

Civil Code section 4370 provides that "[i]n respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorneys' fees as may be reasonably necessary to maintain or defend any subsequent proceeding . . . ." ■ The purpose of the award is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy. (*In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 525 [160 Cal.Rptr. 379]; *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d at p. 466.)

■ In making its determination as to whether or not attorney fees and costs should be awarded, the trial court considers the respective needs and incomes of the parties. (*In re Marriage of Popenhager, supra,* 99 Cal.App.3d at p. 525; *In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].) Further, the trial court is not restricted in its assessment of ability to pay to a consideration of salary alone, but may consider all the evidence concerning the parties' income, assets and abilities. (*Meagher* v. *Meagher* (1961) 190 Cal.App.2d 62, 64 [11 Cal.Rptr. 650]; *Estes* v. *Estes* (1958) 158 Cal.App.2d 94, 98 [322 P.2d 238].)

■ Finally, a motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. (*Stewart* v. *Stewart* (1909) 156 Cal. 651, 656 [105 P. 955]; *In re Marriage of Cueva* (1978) 86

Cal.App.3d 290, 296 [149 Cal.Rptr. 918].) In the absence of a clear showing of abuse, its determination will not be disturbed on appeal. (*Ibid.*; *In re Marriage of Janssen, supra,* 48 Cal.App.3d at p. 428.) "[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]" (*In re Marriage of Cueva, supra,* 86 Cal.App.3d at p. 296.)

■ Review of the total financial situation of each of the parties reveals that there is substantial evidence to support the trial court's order. The record reflects that the trial court considered the financial statements of both the appellant and respondent before making its award. Appellant's financial statement disclosed a net monthly income that was several hundred dollars less than her monthly expenses. Further, appellant's total separate property assets amounted to even less than her net monthly income. According to her statement, then, appellant's assets would have been depleted within a matter of months and her expenses would continue to exceed her net income.

Respondent's financial statement, prepared in the spring of 1980, also reflected monthly expenses which exceeded his net monthly income by over $800. Similarly, respondent's assets, although greater than appellant's, would also have been depleted within a few months if his income and expenses remained the same.

However, the court also had before it a comparative statement of respondent's business revenue and expenditures for the years 1978 and 1979, respondent's first two years of medical practice. Significantly, this comparative statement demonstrated that the fees which respondent collected during his second year of practice were more than double the fees he collected during the first. His annual net income increased by over $40,000 in one year. On the other hand, there was no corresponding statement or testimony to indicate any likelihood of an increase in appellant's income.

Given this evidence, this court can only conclude that the trial court made the reasonable inference that respondent's burgeoning medical practice would continue to flourish and that his income would increase dramatically. The facts of this case fall woefully short of establishing any abuse of discretion by the trial court. ■ "[T]he cases have frequently and uniformly held that the court may base its decision on the [paying spouse's] ability to earn, rather than his [or her] current earnings . . ." for the simple reason that in cases such as this, current earnings give a grossly distorted view of the paying spouse's financial ability. (*Meagher* v. *Meagher, supra,* 190 Cal.App.2d at p. 64.)

## IV.

That portion of the judgment ordering respondent to pay appellant's costs and attorney fees is affirmed. The judgment denying compensation for contributions to spousal education is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion. Appellant to recover costs on both appeals.

Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**MOSK, J.**—While I agree this matter should be returned to the trial court for consideration in the light of recent legislation, I fear that inappropriate language in the majority opinion may mislead the bench and bar. Several times in the majority opinion—indeed, in framing a question at the outset—there is reference to "compensation" for contributions to education. I must assume the repetition of that term was calculated and not inadvertent.

At no place in the relevant legislation does the word "compensation" appear. With clarity and precision, the Legislature referred instead to "reimbursement." The terms are not synonymous; there is a significant distinction that extends beyond mere semantics. Reimbursement implies *re-*payment of a debt or obligation; that is what the Legislature obviously contemplated. Compensation, on the other hand, may be payment in any sum for any lawful purpose; the Legislature also obviously did not intend to give such a blank check to trial courts.

Furthermore, the majority, in their creative reference to "compensation," fail to emphasize to whom it is to be paid. It is not to an individual spouse, in response to the initial query of the majority. The Legislature was crystal clear: reimbursement is to be made to the *community*. The community consists of both the husband and the wife, not one or the other. Thus when reimbursement is made to the community, that reclaimed community asset should be divided between the husband and wife in the same manner as all other community property.

I point out that the issue framed in this case does not involve the element of spousal support. That is to be awarded generally on the basis of the needs of one spouse and the ability of the other to pay, although a number of other factors may be considered. (Civ. Code, § 4801.) The only issue raised by the appellant in these proceedings is whether acquired knowledge and education are a species of property subject to monetary division. The Legislature has now answered that question in the negative.

To review the legislation: Civil Code section 4800.3, subdivision (b)(1), provides "The *community* shall be *reimbursed* for community contributions

to education or training of a party that substantially enhances the earning capacity of the party. The amount *reimbursed* shall be with interest . . . ." Subdivision (c) provides "The *reimbursement* and assignment required by this section shall be reduced or modified . . . ." Subdivision (d) is even more precise: "*Reimbursement for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party* for the education or training and any resulting enhancement of the earning capacity of a party." (Italics added.)

One searches in vain in the statute for a single use of the word "compensation." Thus I find it curious that the majority choose to employ that term rather than to consistently adhere to "reimbursement," the only monetary claim authorized by the Legislature. I trust that trial courts will not be misled into making awards of any sums for any purpose other than that permitted in what the Legislature described with remarkable emphasis as "the exclusive remedy."