[No. B228045. Second Dist., Div. Five. Mar. 19, 2013.]

In re the Marriage of PAUL and JEANETTE LEE BENDETTI.
PAUL BENDETTI, Respondent, v.
JEANETTE LEE BENDETTI, Respondent;
PATRICIA GUNNESS, Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION‡]**

‡Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the majority opinion's Discussion parts II., III., and IV. and the concurring opinion of Justice Mosk.

864

**COUNSEL**

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller, Lisa R. Wiley; and Patricia Gunness, in pro. per., for Appellant.

Law Offices of David S. Karton and David S. Karton for Respondent Jeanette Lee Bendetti.

No appearance for Respondent Paul Bendetti.

OPINION

MOSK, J.—

## INTRODUCTION

In connection with dissolution proceedings, the husband's first wife alleged, inter alia, that the husband fraudulently transferred property to the husband's second wife. The first wife joined the second wife as a third party to the dissolution proceedings and moved for attorney fees pendente lite against the husband and the second wife, which fees the trial court awarded. We hold that the trial court had the discretion to award attorney fees pendente lite against the third party—the second wife—pursuant to Family Code section 2030, subdivision (d)[1] without regard to whether the moving party demonstrated a likelihood of success on the merits or whether there was a prima facie case linking the second wife to issues in the proceeding. We therefore affirm the order with a modification.

## BACKGROUND[2]

In November 1993, Paul Bendetti and his first wife Jeanette Lee Bendetti[3] entered into a marital settlement agreement (MSA) that divided the couple's property and provided for spousal support for Jeanette. In May 1994, a judgment of dissolution ending Paul and Jeanette's marriage was entered. Among the community property the MSA divided was the couple's 50 percent interest in two restaurants, Library I and Library II, that they owned with Peter DeLamos. The MSA stated that DeLamos indicated a willingness to purchase Jeanette and Paul's interest in Library I and Library II for $400,000, less an amount to satisfy a tax liability due the Internal Revenue Service. The remaining balance of the purchase price was to be divided equally between Jeanette and Paul. DeLamos was to execute a promissory note to Jeanette for her half share, the proceeds of which were to be paid in

---

[1] All statutory references are to the Family Code unless otherwise noted.

[2] Appellant Patricia Gunness (Gunness), Paul Bendetti's second wife and the third party to this proceeding, moved to augment the record on appeal with the reporter's transcripts for the hearings on July 26 and 27, 2010, August 25 and 26, 2010, and October 28, 2010. Those hearings concerned the award of attorney fees under section 2030, and are referenced in the January 19, 2011, written order awarding attorney fees. We grant Gunness's motion to augment the record on appeal.

[3] For clarity, we refer to Paul and Jeanette by their first names.

equal monthly installments over a 10-year period at 10 percent interest. Paul was to receive his half share upon consummation of the sale of the restaurants to DeLamos.

Jeanette claims that she never received a promissory note from DeLamos. She acknowledges that for a few years after her divorce, she received occasional funds from DeLamos, generally in the amount of $1,500, but claims that when she asked him why he was sending her payments, he responded that he was doing it to help her out because she had not been treated well in her divorce.

Under the MSA, Jeanette was to receive $1,500 in monthly spousal support from Paul. Paul failed to pay all of the spousal support to which Jeanette was entitled. In 2006, Jeanette began efforts to recover the support Paul owed. During those efforts, Jeanette learned that Paul and Gunness, Paul's second wife, were involved in litigation with Dennis Mastro and others in connection with an investment in the Beverly Hills Steakhouse (Mastro litigation).

In the Mastro litigation, Paul contended that he invested $750,000 in the Beverly Hills Steakhouse restaurant. In his deposition in that action, Paul testified that Gunness signed the operating agreement for the Beverly Hills Steakhouse. According to Paul, he had an agreement with Mastro that he and Mastro would be partners on a 25/75 percent basis in all California Mastro's restaurants. Thus, the "real agreement" was contrary to the written agreement, presumably in that he, rather than Gunness, was the real party to the investment agreement. Gunness testified, in effect, that the restaurant had been put in her name as a nominal party because of her connections. In his deposition, Paul also testified that DeLamos owed him money for the sale of one of the restaurants and agreed to pay part of it by applying it to Paul's required capital contribution for the Beverly Hills Steakhouse ownership.

Jeanette filed a judgment lien in the Mastro litigation. In June 2007, the Mastro litigation was settled with a payment of $7.25 million to Gunness, apparently without regard to the lien.

A few months later, Paul paid Jeanette $271,000 with funds from Gunness to settle Jeanette's claim against him for spousal support. Jeanette then moved to recover $31,693.59 in attorney fees incurred in recovering her spousal support. Paul responded that he was unable to pay the attorney fees as his income was $950 a month in Social Security retirement benefits and he had no assets. Paul, in this proceeding, claimed that Gunness was the investor in the Beverly Hills Steakhouse, that he never received distributions or income from the restaurant, and that there was no agreement with Gunness that he would share in the restaurant investment or in any recovery from the

Mastro litigation. Jeanette replied that Paul had an interest in the Mastro litigation and caused the settlement proceeds to be transferred fraudulently to Gunness.

In July 2008, Gunness brought a declaratory relief action against Jeanette in federal court seeking an adjudication that all of the proceeds of the Mastro litigation belonged to her. Jeanette moved successfully to have Gunness's federal court action dismissed.

In August 2008, Jeanette moved to join Gunness as a party to the dissolution proceeding, which motion was granted. Jeanette then filed a complaint in joinder in the dissolution proceeding for actual fraudulent transfers, constructive fraudulent transfers, declaratory relief, and unjust enrichment. Gunness filed a demurrer to the complaint and a motion to strike a portion of the complaint. In March 2010, Jeanette amended the complaint, and alleged causes of action for declaratory relief and actual and constructive fraudulent transfers under the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.) and common law.

In March 2010, Jeanette moved to recover $223,090.98 in attorney fees pendente lite from Paul and Gunness for services performed through January 31, 2010, that she incurred to enforce the spousal support agreement, to join Gunness to the dissolution proceeding, to prepare an omitted asset motion, and to defend against Gunness's federal court declaratory relief action. Jeanette also sought another $100,000 for services to be performed.

The trial court stated that Gunness and Paul's position was that Jeanette's claim for an interest in the Mastro litigation settlement was a sham. The trial court reasoned that it should not deny Jeanette's request for attorney fees on the basis that her claim might be without merit because it had not yet reached the merits of Jeanette's claim. The trial court said that until reaching the merits, it was inclined to make sure that both sides had attorney representation. The trial court expressed that it was critical to reach the merits of Jeanette's underlying claim.

The trial court granted Jeanette's attorney fees request in part, awarding her an initial amount of $50,000, and continued the hearing to consider further the attorney fees issue. The parties argued various issues related to Jeanette's attorney fees motion, and the trial court awarded Jeanette additional attorney fees. Of Jeanette's request for $223,090.98 for work performed, the trial court awarded her $131,750, which award consisted of the following (and included the previously awarded $50,000 spread among the categories): $30,000 for opposing Gunness's demurrer and motion to strike; $30,000 for an omitted asset motion; $45,750 for Jeanette's efforts to take

Gunness's deposition and her defense of Gunness's federal court declaratory relief action; and $26,000 for joining Gunness to the dissolution proceeding and meeting and conferring on various sets of written discovery. The trial court denied Jeanette's request for $100,000 for work to be performed. Gunness appeals.[4]

## DISCUSSION

I. *The Trial Court's Order That Gunness Pay Jeanette's Attorney Fees Pursuant to Section 2030, Subdivision (d)*

Gunness contends that fundamental fairness and public policy require that a party to a dissolution proceeding seeking attorney fees from a third party pursuant to section 2030, subdivision (d)[5] demonstrate a likelihood of success on the merits and a prima facie case linking the third party to an issue in the proceeding. Gunness contends that there was no such factual showing in this case, only Jeanette's bare allegations, and therefore the trial court erred in ordering her to pay Jeanette's attorney fees.

■ The purpose of an attorney fees award in a marital dissolution proceeding is to provide, as necessary, one of the parties with funds adequate to properly litigate the matter. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [209 Cal.Rptr. 354, 691 P.2d 1020].) The party seeking an award of need-based attorney fees has the burden of establishing need. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 824 [79 Cal.Rptr.3d 588].)

■ In deciding whether to award attorney fees, the trial court considers the parties' respective needs and incomes, including their assets and liabilities. (*In re Marriage of Sullivan, supra,* 37 Cal.3d at p. 768; § 2032.) A motion for attorney fees is left to the trial court's sound discretion and will not be disturbed on appeal absent a clear showing of abuse. (*In re Marriage of Sullivan, supra,* 37 Cal.3d at pp. 768–769.) " '[T]he trial court's order will be

---

[4] On July 27, 2010, and August 26, 2010, the trial court awarded Jeanette a total of $131,750 in attorney fees from Paul and Gunness, jointly and severally. Gunness filed a notice of appeal on October 6, 2010, with respect to the trial court's August 26, 2010, attorney fees award. On October 28, 2010, the trial court issued a minute order stating that $50,000 of the attorney fees award was effective as of July 27, 2010, and $81,750 of the fee award was effective October 28, 2010. A written order awarding attorney fees was entered on January 19, 2011. Gunness has moved to deem her notice of appeal (which she incorrectly describes as having been from the trial court's Oct. 28, 2010, minute order) immediately filed after the January 11, 2011, order was entered. Jeanette does not oppose the motion. We grant Gunness's motion. (Cal. Rules of Court, rule 8.104(d)(1).)

[5] Section 2030, subdivision (d) states, "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party."

overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*Id.* at p. 769.) Under section 2030, subdivision (d), the trial court, in its discretion, may award attorney fees in a dissolution proceeding against a third party—i.e., one joined but not a spouse.

In *In re Marriage of Siller* (1986) 187 Cal.App.3d 36 [231 Cal.Rptr. 757], a marital dissolution proceeding, the husband owned 40 percent of the shares in a family corporation and a 50 percent interest in a family partnership. (*Id.* at p. 41.) During the marriage, 23 parcels of real estate were acquired with title taken in the names of the husband, the wife, one of the husband's brothers, and the brother's wife. (*Ibid.*) In the dissolution proceeding, the wife took the position that she owned a one-quarter interest in the 23 parcels of real property. (*Id.* at pp. 41–42.) The partnership alleged that it paid the purchase price of the 23 parcels from its own funds, and filed an action seeking to impose a purchase money resulting trust in its favor on the properties. (*Ibid.*) The wife then joined the partnership and the corporation as parties in the dissolution proceeding. (*Id.* at p. 42.) The wife claimed that she had a community property interest in property claimed by the partnership and a beneficial interest in properties acquired by the corporation with community funds. (*Ibid.*)

Before trial, the wife moved for an award of attorney fees from the partnership and the corporation. (*In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 42.) The wife claimed that she had been forced to resist numerous unsuccessful motions to block discovery and that she successfully resisted a motion for judgment on the pleadings and two writ petitions by the partnership and the corporation. (*Ibid.*) The trial court awarded the wife $100,000 in attorney fees for which the partnership and the corporation were jointly and severally liable. (*Ibid.*)

On appeal, the partnership and the corporation conceded that Civil Code former section 4370, the predecessor of Family Code section 2030,[6] the statute authorizing an award of attorney fees against a third party, could "be constitutionally applied to allow a spouse to recover pendente lite attorneys' fees against an unrelated third party," but only "where the spouse shows two things: (1) that the spouse would be substantially prejudiced in the prosecution of his or her case in the absence of a pendente lite award of attorneys' fees and (2) the spouse seeking the fees is reasonably likely to prevail on his or her claims against the third party." (*In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 50.) They further argued that the application of the statute to them was arbitrary, oppressive, and unfair in violation of their constitutional

---

[6] Section 2030 continued Civil Code former section 4370, subdivision (a) without change. (*Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 639, fn. 7 [124 Cal.Rptr.3d 676].)

rights to substantive due process. (*Id.* at p. 51.) The Court of Appeal rejected the argument of the partnership and the corporation, holding that application of the attorney-fee-shifting statute to them "was reasonably related to a proper legislative goal, was fundamentally fair, and did not violate the constitutional rights of third parties." (*Ibid.*) In rejecting the argument of the partnership and the corporation, the Court of Appeal acknowledged the concession of the partnership and the corporation that a third party could be liable for attorney fees in a marital dissolution proceeding, but did not hold that such liability depended on a showing by the spouse seeking attorney fees that she would be substantially prejudiced in the prosecution of her case in the absence of a pendente lite award of attorney fees and that she was reasonably likely to prevail on her claims against the third party. (*Id.* at pp. 51-52.)

In its holding, the Court of Appeal addressed the claim by the partnership and the corporation that it was unfair to require them to pay the wife's attorney fees without considering the merits of the dispute and simply because they had money and she did not. (*In re Marriage of Siller, supra,* 187 Cal.App.3d at pp. 51–52.) The partnership and the corporation contended that the trial court erred in basing its fee award on the wife's successful opposition to the discovery motions and writ petitions; they argued that the wife had to "prevail on the merits of her claims or *show a likelihood she would prevail.*" (*Id.* at p. 52, italics added.) The Court of Appeal disagreed. (*Ibid.*) It held that the trial court had not made the partnership and the corporation pay the wife's attorney fees simply because they had money and she did not. (*Ibid.*) Instead, it held that the trial court's attorney fees award was for the wife's successful opposition to the above described motions and writ petitions. (*Ibid.*) In so holding, the Court of Appeal did not state a requirement that a party must prevail on a particular motion in order to receive attorney fees. (*Ibid.*) Instead, it merely rejected the contention that the trial court had based its attorney fees award on the relative financial position of the parties. (*Ibid.*)

The Court of Appeal further held, "it is immaterial that wife did not show she would ultimately prevail in the outcome of the litigation nor that she did not, in fact, prevail following trial. Given the fact that wife held record title to the 23 parcels of real property and that the trial court ultimately sustained her alter ego claim, wife's claims against third parties were not specious." (*In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 53, fn. omitted.)

■ The Court of Appeal held that substantive due process had been satisfied by the wife's showing that she prevailed on the matters for which the trial court awarded attorney fees. (*In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 53.) Unlike in *In re Marriage of Siller,* not all of the fees awarded in the instant case were for motions or proceedings in which

Jeanette prevailed. Instead, some were for pleadings, motions and discovery. But so long as Jeanette was not required to establish a likelihood of prevailing on the ultimate issues, she should be entitled to attorney fees for steps taken to assert and prosecute her claims, even if some of them did not result in her prevailing on the matters for which the trial court was awarding attorney fees. Otherwise, without such a pendente lite award of attorney fees, Jeanette might be unable to pursue her claims. Accordingly, because there is no requirement that a party to a dissolution proceeding demonstrate a likelihood that he or she will prevail in his or her claim against a third party to be entitled to attorney fees pendente lite, Gunness's argument fails. (See *id.* at pp. 51–53.)

█ Gunness's claim that Jeanette was required to present a prima facie showing that Gunness had a connection to an issue in the dissolution proceeding and failed to satisfy that requirement is not correct. Paul contended in his complaint in the Mastro litigation that he invested $750,000 in the Beverly Hills Steakhouse. In his deposition in the Mastro litigation, Paul testified that he settled a $200,000 or $240,000 debt that DeLamos owed him for $130,000, and that $65,000 of that settlement also was invested in the restaurant. Paul further testified that Gunness signed the operating agreement for the restaurant. Paul explained, however, that he had an agreement with Mastro that he and Mastro would be partners on a 25/75 percent basis in all California Mastro's restaurants and that the "real agreement," i.e., his agreement with Mastro, was the operative agreement and not the operating agreement that Gunness signed. Yet, notwithstanding Paul's investment in the Beverly Hills Steakhouse and his partnership agreement with Mastro and notwithstanding Gunness's testimony that, in effect, she was a figurehead in the Mastro agreement, Gunness received a settlement of $7.25 million when the Mastro litigation was settled. In his opposition to Jeanette's attorney fees motion, Paul claimed that Gunness was the investor in the Beverly Hills Steakhouse, that he never received distributions or income from the restaurant, and that there was no agreement with Gunness that he would share in the restaurant investment or in any recovery from the Mastro litigation. Such evidence is sufficient to establish that there were "issues" in the dissolution proceeding that related to Gunness—that is, whether Paul invested in the Beverly Hills Steakhouse funds in which Jeanette had a community property interest and whether Paul fraudulently transferred his interest in the restaurant to Gunness. Even if a party must show that his or her claims are not "specious"[7] (see *In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 53), Jeanette's claims here are not under the facts specious. To be entitled to attorney fees pendente lite under section 2030, Jeanette was not required to

---

[7] A claim that is "specious" is " 'without substance in reality, if not frivolous' " (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1261 [116 Cal.Rptr.2d 358]) or "spurious" (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 825).

make a prima facie showing that she was likely to prevail on her claim, that Gunness was connected to a dissolution proceeding issue.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. Respondent Jeanette Bendetti shall recover her costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

**MOSK, J.,** Concurring.—*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 863.