Filed 3/10/26  Stout v. Stout CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SEVEN

|  |  |
|---|---|
| ANDREW J. STOUT, | B330984 |
| Appellant, | (Los Angeles County Super. Ct. No. BD579228) |
| v. |  |
| JULIE ANN STOUT, |  |
| Respondent. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Convey, Judge.  Affirmed.

Galperin & Hensley, Yury Galperin, for Appellant.

Julie Ann Stout, in propria persona, for Respondent.

————————————————

# INTRODUCTION

Andrew Stout appeals from a family court order requiring him to pay to Julie Ann Stout, his former spouse, $200,000 in attorney fees pursuant to Family Code section 2030, and additional attorney fees of $125,000 as a sanction pursuant to section 271.[1] Andrew contends the court abused its discretion because the evidence and facts do not support these awards. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

The record on appeal is voluminous, reflecting the granular litigation of this case over more than a dozen years—more than three times longer than the parties' marriage. The clerk's transcript on appeal consists of 48 volumes, totaling 14,373 pages. The reporter's transcript of the trial hearings consists of 18 volumes, totaling 2,145 pages.[2] We address only those facts and proceedings relevant to the issues on appeal.

---

[1] Undesignated statutory references are to the Family Code. We refer to Andrew and Julie by their first names to avoid confusion.

[2] Julie also requests that this court take judicial notice of various exhibits and transcripts from the trial court proceedings, many of which are already included in the record on appeal. Because we find the record sufficient to affirm the family court's order, to the extent Julie requests judicial notice of items not already included in the record on appeal, we deny her requests for judicial notice as unnecessary.

A.    *Dissolution Proceedings and* Borson *Motion*

Andrew and Julie were married in May 2009.  Andrew is a financial advisor providing wealth management services.  During Julie and Andrew's marriage, Andrew was responsible for the management of between $45 million and $77 million in client assets.  Julie was employed as a senior global director for an electronics manufacturer at the beginning of their marriage, in which role she ran a $600 million business unit.  In 2011, Julie began working solely with Andrew to support his wealth management business, which she did until the end of their marriage.  She became disabled after a spinal injury in 2013 and was ruled permanently disabled in December 2021.  They have no children.

In March 2013, Andrew filed a petition for dissolution of the marriage.  The parties thereafter engaged in extensive pretrial proceedings from 2013 to 2021, including financial discovery, litigation of temporary spousal support, litigation over Julie's occupancy of the marital residence, and allegations of domestic violence by both parties.

In March 2014, the family court found that Andrew "does not have the ability to pay all of the attorney's fees for both parties, but can pay a portion" under section 2030.  The court ordered Andrew to pay Julie's counsel $47,000 for pretrial attorney fees and expert accounting fees.

In January 2016, the family court granted Julie's request for an order to compel Andrew's deposition testimony and to produce responsive documents.  The court found Andrew failed to provide numerous responsive financial documents, despite providing statements of compliance, and refused to answer deposition questions about his book of business.  The court also

3

awarded Julie $11,000 in attorney fees as a sanction for misuse of the discovery process (Code Civ. Proc., §§ 2023.010, subd. (a); 2025.480, subd. (j)), payable by Andrew to Julie's counsel.

In September 2016, Julie's former counsel, the law firm Freid & Goldsman, filed a motion for $413,788.69 in outstanding attorney fees and costs pursuant to *In re Marriage of Borson* (1974) 37 Cal.App.3d 632 (*Borson*).[3] The family court granted the *Borson* motion in October 2016, finding a disparity in assets and ability to pay and that Andrew had reasonable ability to pay some of Julie's attorney fees, but it reserved determination of the amount of fees until the time of trial.

In October 2016, the family court imposed issue and evidentiary sanctions against Andrew for misuse of the discovery process. (Code Civ. Proc., § 2023.030, subds. (b) & (c).) The court also awarded Julie $20,000 in attorney fees as a further sanction, payable by Andrew to Julie's counsel. (*Id.*, subd. (a).)

In March 2017, Julie filed a request through new counsel for additional attorney fees and costs anticipated to be incurred through trial. The family court found a "vast disparity" in access to funds to pay legal and expert accounting fees, and it ordered Andrew to pay Julie $165,000 in need-based attorney and

---

[3] In a family law case, an attorney who expects to be discharged by the client may file a motion pursuant to section 2030 seeking attorney fees and costs on behalf of his or her client directly from the opposing party. (*Borson, supra,* 37 Cal.App.3d at pp. 637-638). A "*Borson* motion" permits "a discharged attorney to pursue a request for direct fee payment from the former client's spouse if the request is expressly or impliedly authorized by the former client." (*In re Marriage of Erickson & Simpson* (2006) 141 Cal.App.4th 707, 709; see *Borson,* at pp. 637-638.)

4

accountant fees pursuant to section 2030. The court determined, among other things, that: Andrew's income and expense declaration was "filled with inconsistencies and omissions"; Andrew failed to disclose the amount he had paid in attorney fees; "[Andrew] makes a significant income [(over $32,000 per month)] and [Julie] is unable to work and receives disability payments" of $6,250 per month; and Andrew was "less than forthcoming in his disclosures." A previous panel of this court upheld that award on appeal, noting that Andrew's "bad faith litigation conduct" and lack of transparency in his financial disclosures could contribute to the amount of fees awarded by the court. (*Stout v. Stout* (April 16, 2019, B281612 [nonpub. opn.].)[4]

A bifurcated judgment of dissolution as to status only was entered on May 1, 2017. The case ultimately proceeded to trial on several reserved issues in January 2021, and the trial concluded in July 2022. Reserved issues determined at trial included spousal support, confirmation of community and separate property, and division of community property, including the community property interest in the marital residence, retirement accounts, and Andrew's business.

Before the close of trial, Julie requested sanctions under section 271 for dilatory litigation conduct by Andrew, including failure to provide discovery, failure to pay court-ordered attorney fees and costs, and failure to disclose assets.

---

[4] Although Julie contends the present appeal seeks to renew Andrew's challenge to the March 2017 fee award, the fees at issue here are not duplicative of that award.

B.      *Attorney Fees Awarded on the* Borson *Motion*

The *Borson* motion, section 271 sanctions, and other attorney fee issues were argued before the close of trial, on July 12 and 13, 2022.

Freid & Goldsman's September 2016 *Borson* motion requested $413,788.69 in outstanding attorney fees and costs, consisting of $412,187.55 in attorney fees and $1,601.34 in costs. The motion was accompanied by the declaration of Julie's principal attorney, Melvin S. Goldsman, describing legal services rendered on Julie's behalf.  Goldsman attested that Julie had incurred a total of $479,093.75 in attorney fees and $16,394.94 in costs, and the firm had received $18,000 from Julie, $30,000 from Andrew pursuant to the March 2014 order, and $11,000 from Andrew pursuant to the January 2016 order, as well as providing Julie with $21,700 in "courtesy discounts."  Goldsman attached as exhibits to his declaration the firm's billing statements for June 2013 through August 2016, as well as Andrew's February 2016 income and expense declaration, stating Andrew's income for the most recent month as $42,004 in salary and commissions, and his average monthly income in salary and commissions as $33,048.

Goldsman further attested that the firm's representation of Julie included "[a]ddressing [Andrew]'s failure to disclose the dissipation of community assets"; preparation of the motion to compel; preparation of the request for discovery sanctions; preparation of a contempt action due to Andrew's non-payment of court-ordered attorney fees and costs; and preparation of a wage assignment due to Andrew's failure to pay spousal support.  At trial, counsel for Freid & Goldsman argued Andrew was not a credible witness and that Andrew's actions "created unnecessary

6

attorney's fees and costs rendered by Freid & Goldsman" when the firm represented Julie.

Andrew's counsel argued the 2016 finding that Andrew had the ability to pay fees was contradicted by Andrew's subsequent income and expenses declarations and Julie's current gross income, and that the fees sought under the *Borson* motion were "not reasonably related and they're not reasonably necessary to represent [Julie] . . . ."

The family court stated there was a finding of disparity in access to resources to pay fees when the *Borson* motion was first granted, requiring the court to "award reasonable and necessary attorney's fees on a contributed share basis." Based on the parties' July 2022 income and expense declarations and other evidence, the court found that Julie had $9,000 in monthly income from private disability benefits income and Andrew had $8,800 per month in salary and a housing benefit treated as income. The court also found the marital residence was Andrew's separate property, subject to certain reimbursements to Julie and that "Andrew did not present sufficient, credible, reliable evidence to the court to solve [the] question" of the correct valuation of his book of business.

In considering contributive share attorney fees, the family court also considered the factors enumerated in section 4320 for determining spousal support. On the section 4320 factors, the court found Julie was "not in good health", but had marketable skills and would be able to work at the same level as when the marriage started once her disability ends. The court also found "the balance of hardships on a personal level balance in favor of [Julie] and against [Andrew]. [Andrew] is healthy, wage earning, is not in the same wage earning area that he was previously, but

7

he is able to continue in his career.  [Julie] is still on disability, is recovering, and it will be more difficult for her to get back into the workforce full-time . . . ."

The court additionally found that, considering "the income and expense declarations, schedule of assets and debts that Andrew provided at this trial that Andrew does not have the ability to pay for all of the attorney's fees of both parties.  He has to pay his own attorney's fees.  And he then does not have enough resources to pay all of Julie's fees.  Julie should also contribute to her own attorney's fees and costs since she does have income of roughly 9,000 a month."  The court determined there was still "a disparity in access to resources that favors [Andrew] and disfavors [Julie] under Family Code §§ 2030 and 2032 so the Court must award reasonable and necessary attorney's fees on a contributive share basis."  The court also determined that the Freid & Goldsman firm had the expertise "to meet the needs of this . . . case, and that they should be paid for their efforts" even if those efforts did not result in prosecuting the case to conclusion.  The court ultimately found that reasonable and necessary fees and costs under the *Borson* motion were $200,000 in attorney fees and $16,394.94 for court costs, payable by Andrew to Freid & Goldsman.[5]

---

[5]     The family court separately ordered attorney fees of $12,810 payable by Andrew to Julie pursuant to sections 2030 and 2032, for fees incurred by her trial counsel, Dieter Zacher.  Andrew does not argue on appeal that this award or amount constituted an abuse of discretion.

C.    *Section 271 Sanction*

The family court explained that its section 271 analysis, for attorney fees as a sanction, was "based on litigation conduct that caused the case to drag on; that caused the case to have increased costs applied to it because of lack of cooperation; because of litigation tactics that caused expenses and attorney's fees to increase and that the court should somehow tether or award attorney's fees to the aggrieved party based on that litigation conduct. ¶ The court must also assess whether a 271 award would cause an unreasonable or undue financial burden to the person that has to pay it."

The court found that both Andrew and Julie engaged in sanctionable conduct during the dissolution proceedings. The court determined that "fees and costs go both ways in this case" for purposes of section 271, but that "the far greater attribution of fees and costs under section 271 is for [Andrew's] conduct."

The court found that Julie engaged in "two major areas of conduct" that delayed proceedings and increased fees and costs: (1) remaining in the marital residence until a receiver for the property was appointed and a court order was secured ordering her to vacate; and (2) "litigat[ing] the issue of permanent spousal support in the manner it was litigated, which was 'all over the place,'" even though it should "not [be] complicated in a short-term marriage. . . . " The court found that "the additional time and costs . . . are sanctionable." The court assessed $75,000 in sanctions against Julie.

Andrew's sanctionable conduct found by the court included: "several instances" of Andrew's "breaches of fiduciary dut[y] where the court could not calculate damages"; Andrew "not following court orders"; Andrew "not paying court-ordered

9

attorney's fees so that [Julie] could have resources to fund her litigation and present more credible complete evidence on financial matters"; and "not paying the mortgage on the [marital] residence causing it to go [into] foreclosure, in part, and ultimately to a forced sale." The court also found Andrew engaged in discovery conduct "that held back documents [such] that even though sanctions were awarded for discovery motions those discovery efforts had to be followed through." The court explained: "Documents were not produced. Complete analysis was not provided. The parties are required to open the books to each other in a divorce case, and on balance it was Andrew who was more resourced, rich[er] than Julie[,] who failed to do this. This caused Julie to expend more fees and costs in this litigation."

The court made an express finding that Andrew's "actions were taken to delay this case" and, "tethering this to the $200,000 Freid & Goldsman [*Borson*] Motion order," it imposed "section 271 sanctions against [Andrew] of $200,000 payable to [Julie]." Having assessed $75,000 against Julie, and $200,000 against Andrew, the court ordered Andrew to pay "net section 271 monetary sanctions as and for attorney's fees to [Julie] in the amount of $125,000, upon entry of the judgment."

The court also stated that both parties had exhibited qualities reflecting poorly on their credibility. The court stated: "Andrew as the petitioner presented himself as a witness who was very guarded and very restrictive in what he revealed. He seemed put upon by the court process. That is, resentful of the intrusion into his life and these financial matters. To the extent that he prevented and precluded inquiry into those matters by stonewalling discovery, by not cooperating with discovery, by not

10

completing discovery, by not providing full complete responses and document production[,] there's a remedy for that in these proceedings.  [¶]  To the extent that that behavior was demonstrated to the court on the witness stand or in the courtroom, the court takes that into account as a negative factor against his [sic] creditability."  "And Andrew to many degrees reflected negatively, contradictory statements, intransigen[ce], and to Andrew many degrees he did these things during his testimony.  This reflects adversely on his [sic] creditability."  The court noted it could draw a negative inference against Andrew for giving inconsistent statements or failing to provide evidence.  As for Julie, the court found she "presented herself as not directly answering questions by giving answers that were much longer and nonresponsive," and "constantly refer[red] back to a negative statement against Andrew or this happened in this case solely because Andrew did it, or Andrew's responsible for it."

Final judgment on the reserved issues was entered on May 10, 2023.  Andrew timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*
"The purpose of an attorney fees award in a marital dissolution proceeding is to provide, as necessary, one of the parties with funds adequate to properly litigate the matter."  (*In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 868 (*Bendetti*); accord, *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974-975 (*Falcone*).)  Sections 2030 and 2032 govern an award of need-based attorney fees and costs.  Section 2030, subdivision (a)(1), provides:  "In a proceeding for

11

dissolution of marriage . . . the court shall ensure that each party has access to legal representation . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding."

Section 2030, subdivision (a)(2), states, "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."  "The court must make explicit findings on the issues listed in section 2030, subdivision (a)(2)."  (*In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 393 (*Hearn*); accord, *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050.)

Section 2032, subdivision (a), further requires the family court to consider whether the award is " 'just and reasonable under the relative circumstances of the respective parties.' "  (See *Hearn*, *supra*, 94 Cal.App.5th at pp. 393-394; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 867 (*Keech*).)  This determination includes consideration of "the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately." (§ 2032, subd. (b); accord, *Bendetti, supra*, 214 Cal.App.4th at p. 868.)  The determination also includes, "to the extent relevant," consideration of the factors enumerated in section 4320 for

12

determining spousal support.  (§ 2032, subd. (b); *Falcone, supra,* 203 Cal.App.4th at p. 975.)  "[T]he record must reflect that the trial court considered the factors set forth in sections 2030 and 2032."  (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056; accord, *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242.)  "Financial resources," however, "are only one factor for the court to consider."  (§ 2032, subd. (b).)  "[I]n determining whether to award attorney fees to one party, the family court may consider the other party's trial tactics."  (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.)

Section 271, subdivision (a), provides, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which [the] conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction."  (See *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 612 ["[t]he duty imposed by . . . section 271 requires a party to a dissolution action to be cooperative and work toward settlement of the litigation on pain of being required to share the party's adversary's litigation costs"].)  The family court has "broad discretionary authority" to impose section 271 sanctions (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 1220 (*Eben-King*)), and an award of fees as a sanction under this section does not require any showing of need or actual injury (§ 271, subd. (a); see *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478-1479).  But the court must "take into consideration all evidence concerning the parties' incomes, assets, and liabilities," and is

13

prohibited from making an award that "imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a); see *In re Marriage of Pearson* (2018) 21 Cal.App.5th 218, 233 (*Pearson*).)

" ' "On appeal, we review an attorney fee award under section 2030 for an abuse of discretion." ' " (*Hearn, supra*, 94 Cal.App.5th at p. 394; accord, *Bendetti, supra*, 214 Cal.App.4th at p. 868.) We also review the award of sanctions under section 271 for an abuse of discretion. (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 347; *In re E.M.* (2014) 228 Cal.App.4th 828, 850.) The court's factual findings in support of its determination are reviewed for substantial evidence. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25; *Menezes*, at p. 347.) An attorney fees order " ' "will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made." ' " (*Hearn*, at p. 394; accord, *In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532; see *In re E.M.*, at p. 850 [imposition of section 271 sanctions will be upheld on appeal unless, " 'considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order' "]; accord, *Menezes*, at p. 347.)

B.      *The Family Court Did Not Abuse Its Discretion by Awarding $200,000 in Fees on the* Borson *Motion*

Andrew raises two challenges to the family court's *Borson* fee award: (1) that the award was "excessive" and (2) that Julie was "equally guilty" of dilatory conduct. Neither contention warrants reversal.

14

Andrew argues that although the $200,000 in attorney fees awarded on the *Borson* motion was half the amount requested by Julie's former attorneys, "it was still excessive."[6] Andrew makes no argument that any particular hours or fees billed by the firm were unreasonable for the services rendered, and does not identify any factors the court failed to properly consider. Rather, Andrew argues the case was "'overlitigated'" by Julie, and the parties each had the resources to pay their own attorney fees, thus the fees were not reasonably necessary. (See *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 112 (*Ciprari*) ["Notwithstanding the parties' relative economic circumstances, an award under section 2030 et seq. is properly denied if a case has been overlitigated or if the fees otherwise were not 'reasonably necessary.' "].)

Andrew relies on *Keech*, *supra*, 75 Cal.App.4th at pages 870 to 871, which held "[i]t was an abuse of discretion to order husband to pay wife's attorney fees without making any inquiry into the reasonableness of those fees," where "[t]he record on appeal does not itself justify fees of this magnitude during the time frame in question." *Keech* stated that "[a]pproval of claims of this type, without prior judicial scrutiny followed by appropriate findings," was an "abdication of the judicial function." (*Ibid.*)

But Andrew concedes that here, unlike *Keech*, the trial court performed a reasonableness inquiry, and he argues that "despite the examination by [the] trial court as to the 'reasonableness' of [the] fee," the award punishes Andrew for the

---

[6]     Andrew does not argue on appeal that the family court's award of $16,394.94 for court costs on the *Borson* motion was an abuse of discretion.

expenses of overlitigation when Julie is "equally guilty." As Andrew notes, "[t]he court must take into account the relative circumstances of the parties including their respective needs, income, and assets. In determining whether the fees incurred were reasonable, the court may consider various factors including the nature of the litigation, its complexity, the amount involved, the financial circumstances of the parties, the legal skill involved, and whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case." (*In re Marriage of Kelso* (1998) 67 Cal.App.4th 374, 385.)

Our review of the record demonstrates the court performed a thorough assessment of the parties' relative circumstances, including their respective incomes and needs. Based on the facts before it, the family law court expressly found that there was a disparity in access to funds to retain counsel affecting Julie, that the "balance of hardships" favored Julie, and that Andrew had the ability to pay for some (although not all) of Julie's legal representation. Substantial evidence supports these findings: Although the parties' monthly income was relatively close at the time of trial ($9,000 in disability benefits for Julie and $8,800 in salary and housing for Andrew, down from $33,038 average for Andrew in 2016), the evidence was that Andrew was "healthy, wage earning, is not in the same wage earning area that he was previously, but he is able to continue in his career. [Julie] is still on disability, is recovering, and it will be more difficult for her to get back into the workforce full-time . . . ." The court also noted Andrew's history of withholding financial discovery, including that "Andrew did not present sufficient, credible, reliable evidence to the court to solve [the] question" of the correct

16

valuation of his book of business, which supports an inference against Andrew on the valuation of his assets.

Although Andrew argues Julie had the resources to pay her own fees, "[t]he fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested." (§ 2032, subd. (b).) Further, the relevant inquiry is the parties' relative circumstances, and a need-based fees award may be proper even if the party requesting fees can pay her own attorney fees. (See *Ciprari*, *supra*, 32 Cal.App.5th at p. 111 ["By mandatory consideration of the parties' relative circumstances, section 2032 authorizes a need-based fee award even if [the party requesting the award] could pay her own attorneys' fees"].)

The family court's finding that the fee award and amount to be paid by Andrew were reasonable is also supported by substantial evidence. Although the family court noted "there is not an itemized statement accompanying the [*Borson*] Motion as to whether each entry was reasonable or necessary," the motion attached detailed itemized billing records from June 2013 through August 2016, as well as Goldsman's declaration describing in detail his qualifications and the specific legal services performed during the firm's representation of Julie. This was sufficient evidence for the court to conclude "Fr[ei]d & Goldsman had the commencement, experience, education, training and status in the community to meet the needs of this case and that they should be paid for their efforts even if those efforts were not entirely or even remotely successful in prosecuting this case to its conclusion . . . ."

17

The family court also considered, as it was authorized to do, evidence of Andrew's bad faith litigation tactics during the period Julie was represented by Freid & Goldsman, resulting in a greater responsibility for the ballooning litigation expenses at that time. (See *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 166-168 [affirming award of $750,000 attorney fees to the wife because the record "reveals a case of stunning complexity, occasioned, for the most part, by husband's intransigence"]; *In re Marriage of Kozen* (1986) 185 Cal.App.3d 1258, 1264 [affirming $300,000 fee award to wife even though amount was "obscene" relative to community assets, where husband's "stonewalling" and lack of cooperation in discovery, as well as wife's reasonable mistrust of husband's representations regarding his assets, contributed to the amount of accountant and attorney fees incurred].) Goldsman declared the firm's representation of Julie included "[a]ddressing [Andrew]'s failure to disclose the dissipation of community assets"; preparation of the motion to compel; preparation of the request for discovery sanctions; preparation of a contempt action due to Andrew's non-payment of court-ordered attorney fees and costs; and preparation of a wage assignment due to Andrew's failure to pay spousal support.

This litigation history from 2013 to 2016 is also reflected in the record, and Andrew's intransigence and dilatory tactics were noted by the family court, which found that Andrew "prevented and precluded inquiry" into financial matters "by stonewalling discovery, by not cooperating with discovery, by not completing discovery, by not providing full complete responses and document production." (See *Ciprari, supra,* 32 Cal.App.5th at p. 112 ["The trial judge was in a position to assess whether or not the case was overlitigated and the fees reasonably incurred."].) If one party's

18

actions are the catalyst for excessive litigation, it is improper for a court to deny a fee award based on "overlitigation." (See *id.* at p. 113 [abuse of discretion for trial court to deny wife's fees request as unreasonable due to "overlitigation," where husband's comingling of assets inflated litigation costs; "a much more nuanced and granular inquiry is required when assessing reasonableness in this context"].)

Although there was also evidence that Julie's conduct contributed to the costs of litigation, we defer to the trial court's balancing of the evidence in finding Andrew bore greater culpability. In determining whether the family court's decision is supported by substantial evidence, we " ' "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations.' " (*Ciprari, supra,* 32 Cal.App.5th at p. 94.)

Under the circumstances, we cannot conclude the family court abused its discretion. (See *Hearn, supra,* 94 Cal.App.5th at p.394 [under the abuse of discretion standard, " ' "[t]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made" ' "]; *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 406.)

C.      *The Section 271 Sanction Award Was Within the Family Court's Broad Discretion*

Andrew argues the section 271 sanctions awards of $200,000 against Andrew and $75,000 against Julie were an

19

abuse of discretion because Julie's conduct frustrated speedy resolution and the parties were equally at fault. He argues that "[i]f [Andrew] was equally at fault, then the attorney's fees as a sanction should have been zero," rather than net $125,000 against Andrew, "as the equal conduct on the part of the parties would have created an equivalence in culpability."[7]

As stated, the family court found that Andrew's conduct was more sanctionable than Julie's conduct. Although the court determined that "fees and costs go both ways in this case" for purposes of section 271, it concluded "the far greater attribution of fees and costs under section 271 is for [Andrew's] conduct."

Substantial evidence supports this determination, including that Andrew: did not pay court-ordered attorney fees; did not pay the mortgage on the marital residence; and engaged in discovery misconduct resulting in discovery sanctions for failing to produce documents and provide accurate financial information. The family court weighed the evidence of Andrew's conduct and the evidence of Julie's conduct, and it found that "on balance it was Andrew who was more resourced, rich[er] than Julie[,] who failed to [open the books]," and "caused Julie to have to expend more fees and costs in this litigation" through his dilatory tactics.

Andrew does not dispute the findings of the family court regarding his conduct or the court's determination that his conduct justified sanctions under section 271. Instead, he only argues the net award should be zero because Julie was equally at fault. But, as stated, the family court determined that Andrew

---

[7] Andrew does not argue the award "imposes an unreasonable financial burden" on him. (§ 271, subd. (a); see *Pearson, supra*, 21 Cal.App.5th at p. 233.)

bore greater culpability than Julie for conduct that drove up fees and costs in their divorce case, and that he was, on balance, better resourced and richer than Julie. We defer to the trial court's findings because they are supported by substantial evidence and do not reweigh the evidence on appeal. (See *Ciprari, supra,* 32 Cal.App.5th at p. 94; *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 109.) Accordingly, "[t]he trial court's award of attorney fees to [Julie] was within its broad discretionary authority to do so under Family Code section 271." (*Eben-King, supra,* 80 Cal.App.4th 92, 122.)

D. *Julie's Request for Sanctions on Appeal*

Julie requests that we impose appellate sanctions on Andrew for filing a frivolous appeal. (See Cal. Rules of Court, 8.276(a)(1) [Court of Appeal may impose sanctions for "[t]aking a frivolous appeal or appealing solely to cause delay"]; Code Civ. Proc., §§ 128.5, 907.) "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Although " 'the borderline between a frivolous appeal and one which simply has no merit is vague indeed[,'] . . . [sanctions] should be used most sparingly to deter only the most egregious conduct." (*Flaherty*, at pp. 650-651.) We decline to impose sanctions under the circumstances presented here. "An appeal that is simply without merit is *not* by definition frivolous" (*id.* at p. 650), and despite Andrew's documented history of dilatory

21

tactics, we cannot say his appeal was without merit or solely to cause delay.

## DISPOSITION

The family court's order is affirmed.  Julie may recover her costs on appeal.  Julie's request for appellate sanctions is denied.


MARTINEZ, P. J.

We concur:


SEGAL, J.


FEUER, J.