Filed 7/23/25  Marriage of Shields CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re the Marriage of ROBYN and STEVEN SHIELDS. | C101863 |
| ROBYN SHIELDS,<br><br>Respondent,<br><br>v.<br><br>STEVEN SHIELDS,<br><br>Appellant. | (Super. Ct. No. 18FL43332) |

Steven and Robyn Shields were married in 2005 and separated in 2017.[1]  In case No. C098005, this court decided their appeal and cross-appeal from the judgment of dissolution.  While the appeal was pending, Steven requested appellate attorney's fees and a change to child and spousal support orders.  The trial court denied the requests.

---

[1]  We will refer to the parties by their first names for clarity.

1

Steven now contends the trial court abused its discretion in denying his request for attorney's fees. Finding no abuse of discretion, we will affirm the trial court's order denying his request for attorney's fees.

BACKGROUND

The trial court entered a dissolution judgment in 2022. Among other things, the judgment set child and spousal support at zero. Steven filed an appeal and Robyn filed a cross-appeal in case No. C098005.[2] Steven was laid off from his job while the appeal was pending.

In February 2024, Steven filed a request that Robyn pay him child support, spousal support, and $35,000 in appellate attorney's fees. He argued the fee award was required given the disparity in assets and income between him and Robyn.

Steven's income and expense declaration showed that his average monthly income for the prior 12 months was $16,106. In addition to his wages from full-time employment with L3 Cincinnati Electronics Corporation (L3), in 2023 he earned a net income of $173 from his industrial rope access instruction company MountainGeist LLC. The net profit from MountainGeist LLC in 2022 was $15,307. He had $49,018 in cash, $257,307 in stocks, bonds and other assets that he could easily sell, and $15,000 in personal property. His estimated average monthly expenses, including legal fees, totaled $8,531. In addition, he paid $35 a month for insurance premiums and $288 a month for children's healthcare costs not covered by insurance. He owed attorney's fees in the amount of $8,255. He used non-retirement savings, unemployment benefits, and income from MountainGeist LLC to pay living expenses after he was laid off.

---

[2] This court filed its opinion in case No. C098005 on November 4, 2024. We construed Steven's request for judicial notice as a request to incorporate by reference the docket and opinion in case No. C098005 and granted it.

Steven averred the following: He worked as an aerospace engineer for many years. He worked remotely for L3 from 2020 to August 31, 2023. After his layoff, he looked for remote-work jobs in aerospace because he shared 50/50 custody of his daughter K. with Robyn and did not want to relocate from Calaveras County. K. was 14 years old at the time of the fee request. Steven had not yet found a job and could not pay his attorney's fees to respond to Robyn's cross-appeal and to prepare a reply in his appeal in case No. C090085.

Robyn opposed Steven's fee request. She was employed as an independent contractor dentist, working about 12 hours a week. Her income and expense declaration showed her average monthly income for the prior 72 months was $3,322.92. Her average monthly income in 2023 was $6,166.67, which was unusually high because the practice she worked for had employed two trained assistants that year. Her monthly average investment return was $4,678.87, but because of the extraordinary growth in the stock market in 2023, her monthly average investment return for that year was $17,061.75. She had $5,000 in cash, $4,372,143 in stock, bonds and assets that she could easily sell, and $2,919,308 in real and personal property. Her estimated average monthly expenses totaled $7,256. In addition, she paid $652 a month in insurance premiums for herself, her son, and K.; $1,650 a month for healthcare costs not covered by insurance and educational or other special needs for K.; and $450 a month to help support her son in college and for pet medical insurance. She paid for 95% of K.'s needs and activities.

Robyn averred the following: K. had an active school, athletic, and social life. Robyn was responsible for getting K. to her activities and appointments, purchasing the things K. needed, and doing her laundry. K. would not be adversely affected if Steven had to commute for work. Steven had an engineering degree, a master's degree in optical systems engineering, and extensive experience in outdoor skills, management and construction. Robin found five job listings that fit Steven's qualifications and matched his prior salaries by conducting a quick search on the internet for "aerospace project

3

manager remote." She found 101 open job listings in Northern California when she searched for "remote aerospace engineering" on Google. A Google search for non-remote jobs in the aerospace industry within Steven's historic commuting distances yielded hundreds of results. Robyn also found 44 job openings with the Calaveras County Human Resources Department. Steven would qualify for many of those positions. There were also several jobs available at the Sheriff's Department where Steven volunteered. With regard to Steven's assets, he will receive an equalizing payment of $237,469.94 under the judgment, in addition to the assets listed in his income and expense declaration. He previously reported he had cash, stocks and investments totaling $784,453, and that there was $1,455,440 in his 401(k) account as of June 30, 2022. He had $51,380 in his bank accounts at the time of the trial.

Robyn's attorney declared that he searched for remote aerospace engineering jobs and received two invitations to apply.

Steven filed a reply, arguing that imputing income to him and forcing him to move three or more hours away would not be in K.'s best interests. His reply declaration averred the following: He was actively involved in K.'s activities. His income from MountainGeist LLC was more than what he would earn from a low-level retail or entry-level position below his qualifications, and working for MountainGeist LLC allowed him to look for a high-paying position. He provided a list of places where he had looked for a job. Nearly all of those were for remote work. Although positions were advertised as remote, employers prioritized applicants who could relocate or work partly on-site. He received a few interviews but no job offer.

Robyn presented evidence at the hearing that Steven withdrew $35,000 from his bank account a week before he filed his request for attorney's fees and deposited that sum in a non-retirement investment account.

The trial court took judicial notice of its entire file. It denied Steven's attorney's fee request and continued the hearing on the request for child and spousal support so that

4

Steven could undergo a vocational evaluation and the trial court could receive the evaluator's report. The trial court stated that in ruling on the request for attorney's fees, it had to consider what was just and reasonable under all the circumstances and look at the relative status of both parties. The trial court concluded it was appropriate to impute income to Steven because he had employable skills, there was evidence of employment opportunities, and it had previously heard testimony about Steven's employability and income. It found Steven had easily accessible assets of about $300,000. In addition, he would receive an equalization payment of $237,469.94 if the judgment was affirmed on appeal. Steven's counsel argued Family Code section 2030[3] required an award of attorney's fees when there was a disparity in access to funds and ability to pay, but the trial court said it had balanced the disparity.

The trial court noted that Steven had been an impediment to a resolution that would have obviated the need for the requested fees, and said K. could easily adjust if Steven was at work when she got out of school. Considering everything it had heard, it determined that granting Steven's fee request would be inconsistent with what was just and reasonable under the relative circumstances.

DISCUSSION

Steven contends the trial court abused its discretion in denying his request for attorney's fees.

A

Steven sought appellate attorney's fees under sections 2030 and 2032. Section 2030 authorizes an award of attorney's fees in a proceeding for dissolution of marriage to ensure that each party has access to legal representation to preserve his or her rights. (§ 2030, subd. (a)(1).) An order granting attorney's fees under the statute

---

[3] Undesignated statutory references are to the Family Code.

5

requires a finding that the award is necessary, based on the income and needs of the parties. (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 468-469 (*Nakamoto*).)

When a request for attorney's fees is made under section 2030, the trial court must make findings on (1) whether a fee award is appropriate, (2) whether there is a disparity in access to funds to retain counsel, and (3) whether one party is able to pay for the legal fees of both parties. (§ 2030, subd. (a)(2).) It must award attorney's fees if the findings demonstrate a disparity in access and ability to pay. (*Ibid.*) However, an award of attorney's fees under section 2030 must be just and reasonable under the relative circumstances of the parties. (§ 2032, subd. (a); *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662-663.) This determination requires consideration of, to the extent relevant, the circumstances of each party described in section 4320, which are the circumstances to be considered in ordering spousal support. (§§ 2032, subd. (b), 4320.) Those circumstances include the parties' current income, assets, expenses, obligations, earning capacity, and ability to pay; whether the fees were reasonably necessary; and any other factors the court determines are just and equitable. (§ 4320; *In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 396 (*Hearn*); *Sorge,* at p. 662; *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242-243, 255 (*Alan S.*); *In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630-631.) Financial resources are only one factor a trial court must consider. (§ 2032, subd. (b).)

Section 2030 authorizes an award of appellate attorney's fees. (*Nakamoto, supra*, 79 Cal.App.5th at p. 473.) " 'To warrant an award of fees on appeal, four conditions must be met: (1) the requesting spouse must show a need for the award; (2) the paying spouse must have the ability to pay the fees; (3) the appeal must be taken in good faith; and (4) there must be reasonable grounds for the appeal in the sense that reasonable persons should believe that the contentions merit the appellate court's attention and resolution.' " (*Id.* at p. 474.)

We review a trial court's decision to grant or deny a section 2030 fee request for abuse of discretion. (*Nakamoto, supra*, 79 Cal.App.5th at pp. 469, 474.) We will not disturb the trial court's exercise of discretion if it falls within the range established by the applicable legal criteria. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25.) We review the trial court's factual findings under the substantial evidence standard and its resolution of questions of law de novo. (*Nakamoto,* at p. 469; *Knox,* at p. 25.) "Under the substantial evidence standard, ' "[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citation.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding." ' [Citation.] '[W]e examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.' [Citation.] We do 'not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court.' " (*Nakamoto*, at p. 470.) In interpreting a statute, we harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. (*In re C.H.* (2011) 53 Cal.4th 94, 100.)

B

Steven contends the trial court should have granted his appellate attorney's fee request because there was a disparity in access to funds and ability to pay. But the evidence, viewed in the light most favorable to the trial court's order, showed Steven and Robyn had adequate resources to litigate the appeal and cross-appeal.

Income and expense declarations executed under penalty of perjury may be used to establish need and ability to pay. (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1221.) The income and expense declarations showed Robyn's monthly expenses exceeded her monthly income. In comparison, not considering the severance pay he received from L3 and any imputed income, Steven's estimated monthly expenses were

7

only a little more than one-half of his reported average monthly income. While Robyn had significantly more in cash and accessible assets than Steven, Steven had over $306,000 in cash and assets that he could sell, and he will receive an equalization payment as a result of the division of property in the dissolution.

Moreover, the trial court correctly stated that in deciding Steven's fee request, it had to consider what was just and reasonable under the relative circumstances of the parties. (§ 2032, subd. (a).) Whether to grant or deny a request for attorney's fees "should be the product of a nuanced process in which the trial court should try to get the 'big picture' of the case, i.e., 'the relative circumstances of the respective parties' as the statute puts it." (*Alan S., supra*, 172 Cal.App.4th at p. 254.) The judge who decided Steven's fee request handled the case from its inception, was familiar with the evidence presented at the dissolution trial, and read all of the papers filed in relation to Steven's fee request. The judge said he considered ability to pay and whether there was a disparity in access to funds. Steven does not identify any evidence in the record supporting his claim that as a result of the trial court's order, he was required to choose between using his dwindling funds for his own support or to pay his attorney. He does not identify any other circumstance the trial court should have but failed to consider. In his appellate reply brief, Steven urges that the trial court failed to make findings regarding section 4320 factors. We do not consider claims made for the first time in a reply brief without a showing of good cause. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

As the appellant, Steven bears the burden of demonstrating error. (*Nakamoto, supra*, 79 Cal.App.5th at p. 474-475.) An appellant does not meet that burden by merely presenting facts that afford "an opportunity for a difference of opinion." (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.) We are not persuaded that there was such a disparity in access to funds for Steven's appellate attorney's fees that no judge could reasonably deny his section fee request.

Steven repeatedly states in his appellate briefs that the trial court denied his fee request without conducting an evidentiary hearing. In his appellate reply brief, he asserts the trial court refused to set the matter for an evidentiary hearing before summarily denying his fee request. The claims, made without citation to the record and legal authority and without reasoned argument, are forfeited. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Steven further asserts that the trial court failed to make express findings required under section 2030, subdivision (a)(2). Section 2030 requires a trial court to make express findings on whether an award of attorney's fees under the statute is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. (§ 2030, subd. (a)(2); *Hearn, supra*, 94 Cal.App.5th at p. 393; *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).) Such findings must be stated in writing or orally on the record. (*Morton*, at p. 1050.) We agree the trial court did not make the required express findings.

Nevertheless, failure to make such findings does not, standing alone, require reversal of the trial court's order. (*Morton, supra*, 27 Cal.App.5th at p. 1051.) Steven must establish that the error was prejudicial. (*Ibid.*) He must show a reasonable probability that he would have obtained a more favorable result in the absence of the error. (*Ibid.*)

The trial court statements indicate it is not reasonably probable that it would have granted Steven's fee request had it made the requisite express findings. The trial court made a finding regarding Steven's easily accessible assets. In addition, it concluded that it was appropriate to impute income to Steven, a finding we consider in part C. The trial court said it had balanced the disparity in access to funds and ability to pay. The trial court also considered the fact that Steven had been an impediment to a resolution that would have obviated the need for the requested fees. A trial court may consider a party's

9

litigation tactics in ruling on a section 2030 request for attorney's fees.  (*Nakamoto*, *supra*, 79 Cal.App.5th at pp. 469-473.)  The trial court found, based on everything it had heard, that it was not just and reasonable under the relative circumstances to award Steven attorney's fees.  Steven fails to establish prejudicial error by the trial court.

C

Steven next argues there was no basis on which to impute income to him because there was insufficient evidence of opportunity to work.

A trial court may consider earning capacity instead of current earnings in deciding a request for section 2030 attorney's fees.  (§§ 2032, subd. (b) [providing that a trial court must consider relevant section 4320 factors in deciding a request for attorney's fees under section 2030,]; 4320, subd. (c) [providing that a trial court must consider ability to pay, taking into account the supporting party's earning capacity in deciding spousal support]; *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769 [applying predecessor statute to section 2030]; *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1085; *Hearn, supra*, 94 Cal.App.5th at p. 396.)  Earning capacity requires both ability to work and opportunity to work.  (*Hearn*, at p. 396 [in determining a husband's ability to pay attorney's fees, the court considered evidence of his qualifications, history of employment, and statement that he expected to be employed in a month]; *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 927 [involving a child and spousal support award]; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1370-1372 [same]; see *Sullivan*, at p. 769 [concluding that the trial court could consider the husband's ability to earn, i.e., that the income from his medical practice would increase dramatically, in deciding an attorney's fee award].)  Factors relevant to ability to work include age, occupation, skills, education, health, background, work experience, and qualifications.  (*Cohn,* at pp. 927-928.)  Opportunity to work exists when there is substantial evidence of a reasonable "likelihood that a party could, with reasonable effort, apply his or her education, skills and training to produce income."  (*Id.* at p. 930.)  We review the trial court's decision to

10

impute income for abuse of discretion. (*In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393.)

There was substantial evidence that Steven had ability to work. He was 53 years old and was in good health. He had a Bachelor of Science degree in engineering and a master's degree in master system engineering. He worked as an aerospace engineer since graduating from college. He worked for Lockheed Martin from at least 2005 until 2016. He started working full time for L3 in August 2020 and was laid off on August 31, 2023. At that time, he was a senior principal in business development and his annual salary was $207,865.

There was also substantial evidence of opportunity to work. Want ads are admissible to show the availability of employment opportunities. (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1338-1339.) Robyn found five job listings for remote work as an aerospace project manager that fit Steven's qualifications. There was evidence of two job opportunities for remote work as an aerospace project manager with a salary of $155,000. On another Website, Robyn found 101 job listings in northern California for remote work as an aerospace engineer. Steven conceded there were advertisements for remote positions in his field.

Steven averred that remote positions might require some work on-site and there was no authority requiring him to move away from K. and forego custody to obtain a job. He indicated he did not want a job that would require any on-site attendance. But Steven worked on-site a few days a month during his employment with Lockheed Martin, and later, while working remotely, he traveled occasionally for work. Nothing in the record shows there were no available remote-work jobs in aerospace engineering that would allow Steven to have physical custody of K. on a 50/50 basis. While Steven may choose to consider only jobs that required no on-site work or no travel, he may not do so and claim a need for attorney's fees. We do not consider the report by the vocational

11

evaluation expert in determining whether there was error by the trial court. (See generally *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)

Steven nevertheless contends the trial court failed to make an express finding that imputing income to him would benefit K., citing *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10. In the context of child support and citing section 4058, the appellate court in *In re Marriage of Ficke* stated that a trial court abused its discretion in imputing income without an express finding that the imputation would benefit the children.[4] (*Ficke,* at p. 13.) We note that none of the authorities cited in *Ficke* required an express finding regarding the child's best interests. (*Ibid.* [citing *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039].) But even if the trial court was required to make such an express finding, Steven does not show how any error was prejudicial. The question of whether the imputation of income to Steven was in K.'s best interests was presented to the trial court, and the trial court implicitly found that attributing income to Steven was consistent with K.'s best interests, recognizing that children need both parents but that K. could easily adjust if Steven was at work when she got out of school. Although Steven states it was not in K.'s best interests to require him to move away, Steven does not identify any evidence in the record showing that all available remote-work job opportunities would require such a move.

The trial court did not abuse its discretion in considering Steven's earning capacity and in imputing income to him.

_____

**4** Section 4058 provides, in pertinent part: "(a) The annual gross income of each parent means income from whatever source derived . . . . [¶] . . . [¶] (b)(1) [¶] . . . [¶] (B) In a case when a parent's annual gross income is known, the court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children, taking into consideration the overall welfare and developmental needs of the children, and the time that parent spends with the children."

DISPOSITION

The order of the trial court denying Steven's request for appellate attorney's fees is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rule of Court, rule 8.278(a)(5).)


                                                      /S/
                                              MAURO, J.


We concur:


      /S/
EARL, P. J.


      /S/
HULL, J.


13