Filed 2/18/14  Marriage of Wade CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of DORETTE M. and EUAN D. WADE. | B230601 |
| | (Los Angeles County Super. Ct. No. BD466466) |
| DORETTE M. WADE, Respondent, v. EUAN D. WADE, Respondent; KARL WADE et al., Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Affirmed.

Linda T. Barney for Appellants Karl Wade and Irene Wade.

Lopez & Grager and Eve Lopez for Respondent Dorette M. Wade.

———————————————

# INTRODUCTION

Defendants Karl Wade and Irene Wade appeal from an order directing them to pay plaintiff Dorette M. Wade $50,000 in pendente lite attorneys' fees in the marriage dissolution action between Dorette and their son Euan D. Wade. We conclude that the trial court did not abuse its discretion in making the order and that the trial court's implied findings are supported by substantial evidence. We therefore affirm the order.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Marriage*

Dorette was born in Belize. In 1986 the United States granted her and her six-year-old son asylum. In 1988 Dorette met Euan, who also was born in Belize, and in 1990 they married.

Karl and Irene Wade are Euan's parents. They reside in Belize. At one time they owned 10 rental properties in the Los Angeles area, all but one of which they acquired before Euan and Dorette married. In 1992 Karl and Irene acquired one property in Belize on which they built a family home.

During Dorette and Euan's marriage, Euan worked for Wade Property Management, a company owned by his parents. Euan collected rents and otherwise managed his parents' rental properties. Dorette worked as a caregiver for adults and also assisted in collecting rents for the Wade family business. Euan and Dorette purchased and derived income from a rental property in Inglewood. They also purchased four

---

[1] Because the parties share the same surname, we will refer to them by their first names for clarity and without intending any disrespect. (*In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 865, fn. 3; *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1567, fn. 1.)

properties in Belize, including a six-unit apartment building that generated monthly rental income of approximately $1,500.

### B. *The Dissolution*

On May 23, 2007 Dorette filed a petition for dissolution of her marriage to Euan. Dorette did not list any community or quasi-community property and stated that she would amend her petition when she ascertained such property. Euan filed a response that also did not list such property and stated that he too would amend his petition when he obtained all of the relevant information. Dorette also filed a request for a restraining order and order to show cause regarding child custody, visitation, child support, spousal support, attorneys' fees, and costs.

### C. *The Joinder*

On September 22, 2008 Dorette filed a motion to join Karl, Irene, and Wade Property Management. Dorette claimed a community interest in Wade Property Management and certain properties that Karl and Irene owned that Dorette contended were worth approximately $5 million. On October 22, 2008 the trial court granted Dorette's motion, provided that Dorette promptly amend the complaint to specifically identify the properties in which she claimed the community had an interest.

On July 29, 2009 Dorette filed her second amended complaint for joinder alleging claims for an accounting and equitable estoppel. Dorette alleged that she and Euan held a vested one-third interest in two family businesses, Wade Property Management and Wade Building Fund, and the properties these businesses owned. She identified 10 specific properties in which she alleged the community had an interest and that Karl and Irene, either in their individual capacities or as trustees of the Karl and Irene Wade Living Trust, supervised or controlled. Dorette alleged that she and Euan were partners of Karl and Irene and had been compensated with a vested one-third interest in these assets as compensation for the work that she and Euan had performed since 1992 in operating the businesses and managing the properties.

3

Dorette alleged that Euan, Karl, and Irene actively concealed other assets, including a $181,540.38 certificate of deposit held jointly by Euan, Karl, and Irene, as evidenced by a December 29, 2006 letter from Washington Mutual Bank confirming the Bank's renewal of the account with a maturity date of June 17, 2007 (Washington Mutual CD), which Dorette attached to the complaint.[2] Dorette sought an accounting and valuation of the one-third community property interest that she and Euan had in the businesses and the properties; a declaration that Euan, Karl, and Irene were estopped from denying, repudiating, or retaining this interest and from asserting the statute of frauds; and conveyance of the one-third interest vested in the community. On June 1, 2010 Euan, Karl, and Irene answered the second amended complaint, denied the allegations, and asserted 24 affirmative defenses.

D.     *The Order To Show Cause*

On June 14, 2010 Dorette applied for an order to show cause why Karl and Irene should not be ordered to pay Dorette pendente lite attorneys' fees. Dorette sought attorneys' fees for unpaid services rendered and for future services on the ground that she could not go forward with the marital dissolution proceedings and prove the community's ownership interest in the businesses and properties without contribution by Karl and Irene towards her attorneys' fees and costs. She requested $239,976.33 in attorneys' fees and costs pursuant to Family Code section 2030. Dorette also sought, in the alternative, $50,000 in sanctions pursuant to Family Code section 271 for having to respond to unmeritorious and unnecessarily aggressive litigation proceedings initiated by Karl and Irene after the court granted Dorette's motion for joinder and because Karl and Irene had submitted inadequate income and expense declarations. The supporting declaration of Eve Lopez, counsel for Dorette, stated that she anticipated additional attorneys' fees and

---

[2]     The maturity date of the certificate of deposit was only a few weeks after Dorette filed her petition for dissolution of marriage.

4

expert costs for a trial on Dorette's interest in Karl and Irene's business and rental properties.

Dorette also submitted a declaration regarding Karl and Irene's ability to pay. Dorette's personal knowledge of Karl and Irene's finances was based on working with them for almost 20 years while she was married to Euan. She stated that her "best estimate is that [Karl and Irene] exclusively hold title to more than $10 million in property . . . . At times, I assisted collecting rents from the tenants and know from personal knowledge that [Karl and Irene] received between $25,000 and $50,000 per month in rental income after all expenses are paid." Dorette stated that "[b]ased upon my knowledge of [Karl and Irene's] wealth, [they] have the ability to contribute toward my past attorneys fees . . . a minimum of $100,000 toward my prospective attorneys' fees and a minimum of $25,000 toward my prospective costs." [3]

The trial court issued the order to show cause, and on August 19, 2010 Karl and Irene filed a response that included a declaration by Irene. On the issue of Euan's role in managing their rental properties, Irene stated that the properties Dorette listed in the second amended complaint were properties "for which our son collected rents and did some maintenance work in exchange for our financial assistance. We paid him as a property manager accordingly. We never transferred any ownership interest in those properties to Dorette Wade or our son in exchange for his 'services.'" Irene also acknowledged that Euan had held a power of attorney for Karl "in order to fully manage the properties." Irene explained that at about the time Dorette filed the dissolution action, she and Karl "became aware that financial affairs of the properties were in disarray . . . .

---

**3** Dorette had also filed a declaration in 2007 in support of her application for an order to show cause regarding child and spousal support. She stated in this declaration that since she and Euan met in 1988, Euan "has always been a property manager, managing his parent's property." "[Euan] has always worked for Wade Property Management, which is a property management company owned by his parents. . . . He has complete access and discretion with respect to the day to day operations as well as to the financial accounts. [¶] [Euan] draws at leas[t] $5,000 a month from the company."

5

Karl Wade and I terminated our son's services in reaction to the way the properties were being managed." Karl and Irene executed a sworn statement: "This is to certify that I Karl & Irene Wade is [*sic*] the sole proprietor of our personal and business affairs. Due to differences between my son Euan Wade and ourselves, we have terminated his services as it relates to our business."

The parties also submitted income and expense declarations in connection with the order to show cause. Dorette's listed her average monthly income from working as a caregiver as $2,289 and from rental property as $1,000; average monthly expenses as $3,075 (excluding her mortgage, real property taxes, and homeowner's insurance), and a total balance on credit cards of $70,000. She reported that the value of cash and other deposit accounts was "minimal," that she had no stocks, bonds, or other assets she could easily sell, and that the value of her other real and personal property was "undetermined." Dorette stated that she had paid her attorney $39,500 using credit cards and still owed $40,210.33. She had monthly expenses for child care of $315 and healthcare costs for her children of $800.

Karl and Irene filed an income and expense declaration, but only Irene signed it. Irene listed their average monthly income as $1,050 from Social Security and $120 from a janitorial service they owned, with average monthly expenses of $4,085. They estimated that the value of all other real and personal property was $400,000. Irene attached federal tax Schedule E Supplemental Income and Loss for 2008 and 2009, which for 2009 showed rental income and expenses for 18 rental properties, annual rental income from the properties of $192, 963, and net rental income after expenses of $35,535. Many lines on the income and expense declaration form were blank, including the lines for rental income, stocks, bonds, and other assets that could be easily sold. On the issue of attorneys' fees, Irene stated that their attorney had billed them $96,631.75, of which they had paid approximately $24,000.

6

E.    *The Hearing and the Order*

At the hearing on the order to show cause, the trial court found that Euan and Karl had not submitted the required income and expense declarations. The court found that although Irene had submitted a declaration, it was largely blank, "completely inadequate," and failed "to disclose material information." When the court asked counsel for Dorette about the source of the funds Karl and Irene could use to pay an award of attorneys' fees, counsel responded that, at a minimum, there was a $180,000 Washington Mutual certificate of deposit that Karl and Irene held but had not disclosed. Counsel argued that Dorette's request for attorneys' fees was reasonable considering the 12 to 13 commercial properties that were the subject of the second amended complaint. Counsel for Karl and Irene stated that the Washington Mutual CD had matured in 2007 and no longer existed. Counsel for Dorette argued that Karl and Irene had at least $180,000 "whether it's in a CD today or in a stock or bond, or whatever form it is." Counsel pointed out that Irene had admitted in her declaration that they had the funds from the Washington Mutual CD "at the time that we proffered the statement," but gave no information in Irene's income and expense declaration or otherwise about whether she and her husband had dissipated the funds or reinvested them.

The trial court stated: "There is an OSC before the court and the claimants [i.e., Karl and Irene] willfully failed to submit a complete and accurate income and expense declaration. The court noted the deficiencies in the record. It just does not comply with local rule 14.9. . . . [A]lthough the OSC is directed to the respondent, Euan Wade, he completely and totally failed to file an income and expense declaration. The court is concerned that the respondent and claimants . . . think the court rules and state law doesn't apply to them."[4]  The court stated that Euan, Karl, and Irene "didn't disclose the

---

**4**    In 2011, after the hearing on the order to show cause regarding Dorette's request for pendente lite attorneys' fees, the Superior Court of Los Angeles County, Local Rules, rule 14.9 was renumbered as rule 5.9. It requires parties to "completely fill in all blanks on financial declarations" such as income and expense declarations.

7

information; it's blank. They didn't put a zero on the line, they left it blank." The court stated it was "concerned with the litigation conduct of the claimants and the respondent, but the court is also concerned . . . about the cost of litigation. It appears that the claimants have already incurred approximately $100,000 in attorneys' fees in just the last few months and yet failed to disclose material information to the court."

The court granted "the OSC re attorneys' fees as against the claimants in the amount of $50,000 and reserves the amount above that for a future date." When counsel for Karl and Irene asked for the basis of the $50,000 attorneys' fees award, the court responded, "On the evidence before it." The court then stated, "$50,000 to be paid in $10,000 increments starting October 1st [2010] and the first of the month thereafter until paid in full. If any one payment is more than five days late then the entire amount becomes due."

The court's September 15, 2010 minute order stated that the "Court finds that [Karl and Irene] willfully failed to submit a full and complete Income and Expense Declaration and failed to comply with Local Rule 14.9. The Court further finds that [Karl and Irene] failed to disclose material circumstances. [¶] The Court grants the Order to Show Cause. [¶] [Karl and Irene are] ordered to pay to Counsel for [Dorette] the amount of $50,000.00 in attorney's fees and costs." The court's November 29, 2010 written order contained the same rulings and payment terms. On January 28, 2011 Karl and Irene filed a timely notice of appeal from the court's November 29, 2010 order.[5]

---

[5]    Euan is not a party to this appeal. On September 21, 2010, a few days after the hearing on the order to show cause, Euan filed a notice of an automatic stay in connection with the Chapter 7 bankruptcy proceeding he had filed on August 23, 2010. (See 11 U.S.C. §§ 362, 701 et seq.) After the trial court issued its decision, Euan filed a separate notice of appeal, also on January 28, 2011. On February 10, 2011 this court issued an order staying the appeals pending resolution of Euan's bankruptcy proceedings. On August 26, 2011 the bankruptcy court issued an order discharging Euan and on September 20, 2012 closed Euan's bankruptcy case. On December 5, 2012 this court lifted the stay in this appeal and ordered the parties to show cause why Euan's appeal should not be dismissed as moot. On January 14, 2012, after considering the parties' responses, this court ruled that the trial court's order granting Dorette's application for

**DISCUSSION**

Karl and Irene argue that the trial court abused its discretion in ordering them to pay $50,000 in pendente lite attorneys' fees. They point out that the trial court did not specify whether it was awarding attorneys' fees pursuant to Family Code section 2030 or as sanctions pursuant to Family Code section 271.[6] They argue there was insufficient evidence that they had the ability to pay the fees or that they engaged in any sanctionable conduct. We conclude that the trial court did not abuse its discretion under either statute and that there is substantial evidence to support the court's implied findings.

A.     *Standard of Review*

The standard of review for an order granting an application for attorneys' fees under either section 2030 or section 271 is similar. "On appeal, we review an attorney fee award under section 2030 for an abuse of discretion. [Citation.]" (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.) "'[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866; accord, *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 406; see *In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 975 [reversal requires "a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order"]; *In re Marriage of McTiernan and Dubrow* (2005) 133 Cal.App.4th 1090, 1110 [trial court's order is an abuse of discretion if it is "one that '"no judge could reasonably make"'"].)

Similarly, "'"[a] sanction order under . . . section 271 is reviewed under the abuse of discretion standard. '"[T]he trial court's order will be overturned only if, considering

pendente lite attorneys' fees and costs was directed to Karl and Irene only and that therefore Euan had no standing to appeal, and dismissed Euan's appeal.

[6]     Further statutory references are to the Family Code unless otherwise stated.

9

all the evidence viewed most favorably in support of its order, no judge could reasonably make the order.'"'" [Citation.] "In reviewing such an award, we must indulge all reasonable inferences to uphold the court's order." [Citation.]'" (*In re Marriage of Sorge*, *supra*, 202 Cal.App.4th at pp. 652-653; see *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

We review the findings on which the trial court based its exercise of discretion under the substantial evidence standard. (See *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769 [we determine whether "there is substantial evidence to support the trial court's order" under section 2030]; *In re Marriage of Sorge*, *supra*, 202 Cal.App.4th at p. 653 ["'[w]e review any findings of fact that formed the basis for the award of [section 271] sanctions under a substantial evidence standard of review'"]; *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 40 ["[w]e review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party"].) "'"Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. . . .'" (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 24, fn. 21.) "'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)[7]

B.    *Section 2030*

"Pursuant to . . . sections 2030 and 2032, the trial court is empowered to award fees and costs between the parties [in a dissolution action] based on their relative circumstances in order to ensure parity of legal representation in the action." (*In re Marriage of Falcone and Fyke*, *supra*, 203 Cal.App.4th at p. 974, fn. omitted.) At the

---

[7]    An order for payment of pendente lite attorney's fees is "a necessary exception to the one final judgment rule" and is directly appealable. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368, 369; see *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 ["a direct appeal lies from a pendente lite attorney fees order where nothing remains for judicial determination except the issue of compliance or noncompliance with its terms"].)

time the trial court heard and ruled on the order to show cause regarding Dorette's request for pendente lite attorneys' fees, section 2030, subdivision (a)(1), provided that in a marital dissolution proceeding, "the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." In determining whether and how much to order in attorneys' fees and costs, the trial court should evaluate each party's income, needs, and ability to pay in relation to the other party. (§ 2030, subd. (a)(2).) "Under section 2030, subdivision (d), the trial court, in its discretion, may award attorney fees in a dissolution proceeding against a third party—i.e., one joined but not a spouse." (*In re Marriage of Bendetti*, *supra*, 214 Cal.App.4th at p. 869; see *In re Marriage of Perry* (1998) 61 Cal.App.4th 295, 310.)

Sections 2030 and 2032 list factors for the court to consider in determining whether to make an attorneys' fees order under section 2030.[8] "[T]he record must reflect

---

[8]  At the time of the September 15, 2010 hearing on the order to show cause, section 2030, subdivision (a), provided: "(1)  In a proceeding for dissolution of marriage, . . . the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.  [¶] (2)  Whether one party shall be ordered to pay attorney's fees and costs for another party, and what amount shall be paid, shall be determined based upon, (A) the respective incomes and needs of the parties, and (B) any factors affecting the parties' respective abilities to pay. . . ."  Subdivision (d) of section 2030 provided:  "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party."

At the time of the September 15, 2010 hearing on the order to show cause, section 2032 provided:  "(a)  The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.  [¶]  (b)  In determining what is just and reasonable under the relative circumstances, the

that the trial court considered the factors set forth in sections 2030 and 2032." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056; *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242.) Section 2032, subdivision (a), requires the court to determine whether the award is "just and reasonable under the relative circumstances of the respective parties." The court "is entitled to take into consideration the need for the award to enable each party to have sufficient financial resources to present his or her case adequately. In assessing a party's relative need and the other party's ability to pay, it is to take into account ""'all evidence concerning the parties' current incomes, assets, and abilities.""' [Citation.]" (*In re Marriage of Falcone and Fyke*, *supra*, 203 Cal.App.4th at pp. 974-975.) In determining whether to require a third party to pay pendente lite attorney's fees, the court may consider the third party's financial resources and litigation tactics. (*Id.* at p. 975.) Under sections 2030 and 2032, "consideration of [a party's] litigation conduct . . . [is] proper, even without reference to section 271." (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356.)

Karl and Irene argue that there is no substantial evidence of their ability to pay attorneys' fees, as required for an order under section 2030. We conclude there is such substantial evidence, some of it provided by Dorette and some by Irene.[9]

_____

court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320 [regarding circumstances considered in ordering spousal support]. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

[9] Although the trial court stated several times that Karl and Irene had failed to complete income and expense declarations as required by the local rules, the court stated that it was also basing its decision "on the evidence before it" and therefore not solely on the failure by Karl and Irene to comply with the local rules. (See *In re Marriage of Keech*, *supra*, 75 Cal.App.4th at p. 866 [the court's ruling on a request for pendente lite

12

In her declaration, Dorette provided evidence based on her personal knowledge of Karl and Irene's businesses, properties, and wealth. Dorette stated: "I know from my personal experience developed over the last approximate 2 decades that [Karl and Irene] are very wealthy. I have been married to [Euan] for nearly 20 years now and I have had a long history with [Karl and Irene] and have personal knowledge about their wealth; specifically, that the properties at issue in this matter for the most part, are owned outright and are rented to tenants at full market value. The amount of income received by the community during our marriage and [Karl and Irene] was tens of thousands of dollars each month. My best estimate is that [Karl and Irene] exclusively hold title to more than $10 million in property . . . . At times, I assisted collecting rents from the tenants and know from personal knowledge that [Karl and Irene] received between $25,000 and $50,000 per month in rental income after all expenses are paid." Dorette was entitled to give these opinions, to which Karl and Irene did not object, because she had personal knowledge from working in the business and collecting rents from tenants, and because under Evidence Code section 813, subdivisions (a)(2) and (c)(2), she was a "spouse of the owner of the property or property interest being valued" even though the court had not yet "determine[d] the issue of ownership." Karl and Irene did not provide any evidence that Dorette did not have the knowledge of their business that Dorette said she had, nor did Karl and Irene submit evidence (other than Irene's incomplete and inadequate income and expense declaration) that Dorette's estimates of the rental income generated by, and the value of, the properties were incorrect. Dorette's declaration constitutes substantial evidence supporting the trial court's implied finding of Karl and Dorette's ability to pay. (See *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 27 ["testimony of a single witness, 'even a party in a divorce case,' may constitute substantial evidence"].)

attorneys' fees "'must reflect an exercise of discretion and a consideration of the appropriate factors'"]; cf. *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 168 [trial court erred by denying application for pendente lite attorneys' fees on the sole ground that applicant had not filed optional Judicial Council form and by failing to exercise "its discretion in considering the merits of the OSC"].)

13

In addition, Lopez's declaration included evidence, again to which Karl and Irene did not object, of her discovery of $180,000, at the time in the form of a certificate of deposit in the names of Euan, Karl, and Irene, that Karl and Irene failed to disclose on their income and expense declaration. Irene in her declaration confirmed this fact: "The Washington Mutual CD referenced in Dorette Wade's Request for Attorney's Fee for about $182,000 belonged to Karl Wade and I exclusively. The money was acquired through a refinance of our properties, and insurance settlement. The term ended in 2007 as you can tell from the documents." As Dorette points out, Irene failed to state that neither she nor Karl had possession of the funds, nor did she explain where the money went.[10]

Karl and Irene also argue that the parties' income and expense declarations show that all parties had rental income from investment properties. True enough. Dorette's declaration, however, shows she has one rental property from which she receives approximately $12,000 annually. In contrast, Irene's declaration shows that she and Karl have at least 10 rental properties from which they receive $192, 963 annually.

Viewing this evidence in the light most favorable to Dorette and "'giving it the benefit of every reasonable inference,'" as we must on appeal (*In re Marriage of Howell* (2011) 195 Cal.App.4th 1062, 1078), there is substantial evidence that Karl and Irene have the ability to pay the pendente lite attorneys' fees the trial court ordered them to pay. The trial court did not abuse its discretion in finding that Karl and Irene had the ability to pay under section 2030.

---

**10** Karl and Irene argue that the court cannot consider the Washington Mutual CD because it was subject to the stay imposed by Euan's bankruptcy. They admit, however, that they did not raise this issue in the trial court. "'Points not raised in the trial court will not be considered on appeal.'" (*In re Marriage of Turkanis & Price*, *supra*, 213 Cal.App.4th at p. 353.) Moreover, there is no evidence that Euan listed the Washington Mutual CD in his bankruptcy schedules as an asset or that the bankruptcy stay applied to wherever the money was at the time of the hearing.

14

C.    *Section 271*

"Section 271 authorizes an award of attorney fees and costs as a sanction for uncooperative conduct that frustrates settlement and increases litigation costs." (*In re Marriage of Fong*, *supra*, 193 Cal.App.4th at p. 290.)  Section 271, subdivision (a), provides:  "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed.  In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." Section 270 provides:  "If a court orders a party to pay attorney's fees or costs under [the Family Code], the court shall first determine that the party has or is reasonably likely to have the ability to pay."

"Section 271 does not require that the sanctioned conduct be frivolous or taken solely for the purpose of delay.  Rather, the statute is aimed at conduct that frustrates settlement of family law litigation.  Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel.  'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.' [Citation.]" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.) "Section 271, subdivision (a) authorizes sanctions to advance the *policy* of promoting settlement of litigation and encouraging cooperation of the litigants.  This statute . . . does

15

not require any actual injury." (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1480.)

The court may assess section 271 sanctions against third parties who have been joined in the dissolution action. "The fairness rationale of the [section 271] fee award is [that the] third parties caused [a party] to incur fees resisting their nonmeritorious maneuvers" and interfered with that party's right to prosecute his or her lawsuit. (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 53.) In addition, "there is no requirement that a party to a dissolution proceeding demonstrate a likelihood that he or she will prevail in his or her claim against a third party to be entitled to attorney fees pendente lite . . . . [Citation.]" (*In re Marriage of Bendetti*, *supra*, 214 Cal.App.4th at p. 871.)

Karl and Irene argue that the "evidence does not support a finding of sanctionable conduct" on their part. We conclude, however, that there is substantial evidence to support the trial court's implied finding of litigation conduct by Karl and Irene that needlessly increased the attorneys' fees incurred by Dorette and frustrated the policy underlying section 271, and that Karl and Irene engaged in litigation tactics that resulted in increasing Dorette's attorneys' fees beyond her ability to pay.

Lopez explained in her declaration that the "fees incurred in this matter are considerable and, in large part, due to the numerous Orders to Show Cause, Motions, Demurrers, Special Demurrers, Motions to Strike, Motions for [Code of Civil Procedure section] 128.7 Sanctions, Motions to Compel, etc. I have been personally present at all of the proceedings in this matter which amount to approximately 30 hearings." Lopez stated that Dorette had incurred more than $50,000 in attorneys' fees since Dorette filed the motion for joinder. Lopez stated that the discovery Euan, Karl, and Irene had served included 102 special interrogatories from by Euan, 119 special interrogatories from Irene, 146 special interrogatories from Karl, 30 requests for admission from Euan, 50 requests for admission from Irene, 30 requests for admission from Karl, and 26 form interrogatories from Irene and Karl, for a total of 503 interrogatories and requests for admission, of which 371 were propounded by Karl and Irene. Lopez stated, "These discovery requests are voluminous and are attached to the Motions to Compel filed by

16

[Karl and Irene] between April 30, 2009, and May 2, 2009." Counsel for Karl and Irene, Felicia A. Mobley, submitted a declaration admitting that the "special interrogatories were admittedly lengthy," and confirming that she had filed 7 motions to compel further discovery responses.

At the hearing on the order to show cause, counsel for Dorette justified the amount of attorneys' fees requested by emphasizing that she had to oppose "multiple, unsuccessful, [Code of Civil Procedure section] 128.7 motions [Karl and Irene] filed," "numerous demurrers," and "motions to strike and everything under the sun," and respond to "the 503 special interrogatories and requests for admission[] which were propounded against [Dorette] after she was deposed over the course of two days." In granting the request for attorneys' fees, the trial court made findings regarding the most recent uncooperative litigation conduct by Karl and Irene. The trial court found that Karl and Irene "willfully failed to submit a full and complete Income and Expense Declaration" and "failed to disclose material circumstances." The court also stated that Euan, Karl, and Irene were "playing fast and loose with the proceedings," and that the court was "concerned with the litigation conduct of [Karl and Irene] and [Euan]," as well as "the cost of litigation." It is clear, or at least a reasonable inference (*In re Marriage of Howell*, *supra*, 195 Cal.App.4th at p. 1078), from the record that the trial court's order was designed to compensate Dorette for having to respond to multiple motions and sets of discovery from Karl and Irene that frustrated and obstructed Dorette's efforts to litigate and resolve her claim that the community had an interest in the Wade family properties and businesses. Substantial evidence supports the trial court's findings.

Finally, section 271 also requires that the court consider whether the party subject to the section has the ability to pay without incurring an unreasonable financial burden. (See *In re Marriage of Falcone and Fyke*, *supra*, 203 Cal.App.4th at p. 990; *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226.) As noted above, there is substantial evidence to support the trial court's finding that Karl and Irene had the ability to pay a $50,000 attorneys' fee order and that it would not cause them to incur an unreasonable financial burden.

17

## DISPOSITION

The order is affirmed.  Dorette is to recover her costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

WOODS, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.